# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | | |
|---|---|---|
| LINDA-JEAN BRIGGS, | ) | |
|              PLAINTIFF | ) | |
| v. | ) | CIVIL NO. 2:19-CV-59-DBH |
| TOWN OF RUMFORD, ET AL., | ) | |
|              DEFENDANTS | ) | |

## DECISION AND ORDER ON MOTION TO DISMISS

This case challenges the authority of a Maine town's select board to provide in its town manager's employment agreement that it can terminate her without cause. After oral argument on August 8, 2019, and subsequent submissions from the parties, I conclude that the town lacks authority to terminate the town manager without cause. With one exception, I **DENY** the defendants' motion to dismiss the plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

### FACTUAL BACKGROUND

The plaintiff's complaint contains the following factual assertions, which I take as true for purposes of ruling on the defendants' motion.

The Town of Rumford employed the plaintiff, Linda-Jean Briggs, as its town manager. In February of 2018 the parties signed a 3-year employment agreement. Section 4 of that agreement provided: "Town may terminate the employment of BRIGGS pursuant to Chapter 1-A, Section 2 of the Town

Ordinances [an Ordinance provision concerning termination of the town manager "for cause"]. In the event of termination by the Select Board *without* cause, BRIGGS shall be paid a lump sum amount equal to six (6) months salary as liquidated damages." (Emphasis added).

In December 2018-January 2019, Rumford first suspended then terminated the town manager *without* cause and tendered her a check for six months' salary. The town manager declined to cash the check, appealed her termination to the Board of Appeals, and received notice from the Board that it had no jurisdiction to hear her appeal.

## **PROCEDURAL BACKGROUND**

The town manager then filed a complaint in this court. She claims that under Maine statutes and a Rumford ordinance, the town cannot suspend or terminate her without cause, notice, and a hearing (Count 1); and that the town's action deprived her of her property interest in employment in violation of the Maine Constitution's due process clause, Art. I, § 6-A (Count 2), and the due process clause of the Fourteenth Amendment to the United States Constitution (Count 3). The town and its select board members moved to dismiss all counts against them for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6).

At the oral argument I raised with the parties some issues concerning the record before me. The parties then stipulated that the copy of the employment agreement attached to the defendants' motion is accurate and authentic and can be considered on the motion, and that the defendants tendered to the town manager the proper lump sum that the employment agreement called for upon

2

termination "without cause."  Without objection, certified copies of the town charter and the relevant ordinance were admitted to satisfy Maine and federal precedents about how a court can consider local ordinances.[1]  See, e.g., Summit Realty, Inc. v. Gipe, 315 A.2d 428, 429-30 (Me. 1974); Getty Petroleum Mktg. v. Capital Terminal Co., 391 F.3d 312, 321 (1st Cir. 2004).

## JURISDICTION

This federal court has jurisdiction over the dispute only if Count 3 concerning Fourteenth Amendment procedural due process adequately states a federal claim.[2]  That in turn depends upon whether the Rumford town manager had a property interest in her continued employment to support a federal due process claim ("nor shall any state deprive any person of . . . property without due process of law," U.S. Const. Amend. 14).  According to the First Circuit: "It is well established that a public employee has a constitutionally protected property interest in his continued employment when he reasonably expects that his employment will continue." King v. Town of Hanover, 116 F.3d 965, 969 (1st Cir. 1997).  "In the presence of a 'for cause' requirement, the employee typically has a legal basis for thinking he will, in all likelihood, be able to keep the job; in the absence of such a requirement, the state law typically does not provide him with good grounds for such an expectation." Bennett v. City of Boston, 869 F.2d

---

[1] The Town's lawyer provided copies of the certified documents to the court and the plaintiff's lawyers, and after the hearing provided the original certifications.  I admitted the documents provisionally so that the plaintiff's lawyers could have an opportunity to review and challenge them.  No challenge has been received.

[2] The plaintiff asserts federal question jurisdiction over Count 3, 28 U.S.C. § 1331 (the Complaint says § 1341, ¶ 5, but I consider that a typographical error like the error in asserting that she was terminated in 2018, ¶¶ 8, 14, when it was actually 2019), and supplemental jurisdiction over Counts 1 and 2, 28 U.S.C. § 1367.

19, 21 (1st Cir. 1989). Thus, the central question on the motion to dismiss is whether the town can terminate its town manager only for cause; if so, that is a property interest sufficient to generate federal procedural due process requirements.

**ANALYSIS**

The town manager argues that Maine law—both by statute and by town ordinance—prevents a town from terminating a town manager without cause, and that her employment agreement provision to the contrary is therefore unenforceable.

Maine has an "enabling" statute (subchapter 2 of chapter 123 of 30-A M.R.S.A., first enacted in 1939) by which municipalities can adopt a "town manager plan" form of government by specifically voting at a town meeting that they are adopting "this plan."[3] But adoption of the "town manager plan" is not compulsory,[4] and some towns adopted their own town manager government without using the plan, by providing for it in their charter and having the Legislature adopt their charter by Private and Special Law.[5] Rumford was one

---

[3] 30-A M.R.S.A. § 2631(1) states:
    The form of government provided in this subchapter shall be known as the "town manager plan" and, together with general law not inconsistent, shall govern any town in which the voters have adopted this plan at a meeting held at least 90 days before the annual meeting.
[4] See Maine Mun. Ass'n, Local Government in Maine p. 19 (2016):
    With the passage of Home Rule, Maine's cities and towns gained the authority to adopt by local charter any form of government employing a town/city manager. Thus, a town also has the option of choosing the statutory Town Manager Plan or of setting forth its own list of duties and responsibilities for the manager in the local charter.
[5] Once Maine adopted home rule for municipalities (1969-70), a private and special law was no longer necessary.

of the early adopters,[6] well before the existence of the enabling statute and maybe as early as 1927.[7]

Prodded by my questioning at oral argument, the parties have proffered different, competing, versions of Rumford's current source of authority for its town manager form of government. Counsel for Rumford argues that the town has never adopted the legislature's "town manager plan" as such. If that is correct, the provisions of subchapter 2 of chapter 123, all concerning the "town manager plan," would be inapplicable. Instead, the terms of Rumford's town charter and ordinances, as well as general state statutes that apply to all municipalities, would govern its town manager form of government.

The plaintiff, on the other hand, points out that when the Maine legislature adopted the 1969 version of its "town manager plan" legislation, it stated that "[a]ll municipalities operating under the repealed Title 30, chapter 213, subchapter II are deemed to have made the adoption [of the "town manager plan"] as of October 1, 1969." 30-A M.R.S.A. § 2639. The plaintiff contends that when Rumford adopted its current town manager form of government in 1951

---

[6] James J. Haag, The Manager Plan in Maine App. B, p. 60 (1971). According to the Maine Municipal Association, Camden was first, in 1925, "followed by Fort Fairfield, Mt. Desert, Washburn, Rumford and Dexter." Maine Mun. Ass'n, Local Government in Maine p. 19 (2016). It appears that *cities* earlier led the conversion to manager forms of government. Orren Chalmer Hormell, Maine Towns p. 23 (1932) (Auburn first, Portland second).

[7] According to James J. Haag, Rumford first adopted a town manager plan of government in 1927 by charter. James J. Haag, The Manager Plan in Maine App. B p. 60 (1971). (Haag's work was subject to review and comment by a number of people "familiar with Maine manager government for review and comment," including town and city managers and academics. See id. at 1-2.) I have not found a source for that assertion of town adoption in 1927. In fact, Private & Special Laws of 1927, ch. 21 sec. 2 reveals that the *Rumford Falls Village Corporation* was authorized to "hire a village manager" that year. (Rumford Falls Village was a component part of the Town of Rumford.) Private & Special Laws of 1935, ch. 48 sec. 5, authorized a town manager for the Town of Rumford itself in 1935. But I also note that a history of Maine treats Bion Jose as Rumford Town Manager from 1927 onwards. Maine: Resources, Attractions, and Its People p. 81 (Harrie Coe ed. 1928). In any event, whether the Town of Rumford was first authorized to hire a manager in 1927 or 1935 is not material to this dispute.

5

pursuant to a private and special law, it was necessarily operating under the repealed law the 1969 legislation referred to. Rumford disagrees, saying that when the town voted to adopt its charter in 1951, "it was voting to accept a statute passed by the Legislature," "with specific provisions governing the town manager position," and "not voting to 'employ a town manager'" under the repealed statute. Defs.' Reply to Pl.'s Suppl. Mem. at 2 (ECF No. 26). Although it seems to me that Rumford has the better argument, one Maine Superior Court case arguably supports the plaintiff's view. McSorley v. Inhabitants of the Town of Carmel, 2001 WL 1719217 (Me. Super. Ct. May 30, 2001) (Marsano, J.).

If these competing versions of the source of Rumford's governance structure made a difference in this case, I would certify the question to the Maine Law Court under Me. R. App. P. 25 as an important question of state law. But in the end, the disagreement does not affect this case's outcome.

The Rumford Town Charter, as most recently amended, provides that its town manager must have at least a 1-year contract and, after the first year, can have up to a 3-year contract. Article XVIII § 1. Although the Charter does not state on what grounds the town manager can be terminated, the Rumford Town Ordinances do. The chapter dealing with the town manager states: "The Selectpersons may remove or suspend the Town manager *for cause* . . . in accordance with the following procedures." Ch. 1A, sec. 2 (emphasis added).[8]

---

[8] The ordinance says that "for cause" includes, but is not limited to, the grounds described in chapter 36 of the ordinances. Those are: failing to attend at least 50% of the regularly scheduled meetings; conviction of a Class A, B or C crime; conviction of a Class D or E crime that involves moral turpitude; using town property without authority; using the office without authority to influence subordinates, employees and other departments; violating chapter 38 (dealing with the treatment of complaints against town employees); and for cause.

That ordinance subchapter then goes on to specify that the "selectpersons shall file a written preliminary resolution with the Town clerk stating the specific reasons for the proposed removal," copying the manager within 10 days; the manager has the right to reply in writing and request a public hearing; the hearing must occur between 10 and 30 days after the request; the selectpersons must adopt or reject the resolution of removal; the manager has the right to appeal the decision to the Board of Appeals within 5 business days; and the Board must hear the appeal within 10 days. Id. These procedures are identical to those found in the statutory town manager plan, except that the statutory town manager plan does not include the right to appeal the decision to the Board of Appeals.[9] Moreover, another statute that applies to municipalities generally provides: "Except where specifically provided by law, charter or ordinance, the municipal officers shall appoint all municipal officials and employees required by general law, charter or ordinance and may remove those officials and employees *for cause, after notice and hearing.*" 30-A M.R.S.A. § 2601 (emphasis added). According to Rumford's charter, the town manager is an appointive

---

[9] 30-A M.R.S.A. § 2633(3), the town manager plan legislation, provides:

> The selectmen may remove or suspend the town manager for cause in accordance with the following procedures.
>
> > A. The selectmen shall file a written preliminary resolution with the town clerk stating the specific reasons for the proposed removal. A copy of that resolution shall be delivered to the manager within 10 days of filing.
> >
> > B. Within 20 days of receiving the resolution, the manager may reply in writing and request a public hearing.
> >
> > C. Upon request for a public hearing, the selectmen shall hold one at least 10 days but not more than 30 days after the request is filed.
> >
> > D. After the public hearing or at the expiration of the time permitted the manager to request the public hearing, if no such request is made, the selectmen may adopt or reject the resolution of removal.

officer of the town. Art. II, § 2. Section 2601, therefore, applies to Rumford's town manager even if section 2633(3) (the town manager plan provision for removing the town manager) does not.

The town argues that, despite section 2601's and the ordinance's explicit reference to termination for cause, with notice and a hearing, the town was entitled to seek, as it did in the employment agreement, the town manager's prior agreement to her termination *without* cause, notice, and hearing. It points out that the Maine statutes and the Rumford ordinance do not explicitly prohibit negotiating away the requirement of cause, notice, and hearing for termination. Defs.' Reply at 2 (ECF No. 14). Employment at will is common in Maine, and freedom of contract is valued. Defs.' Mot. at 5 (ECF No. 7), Defs.' Reply at 2. The town argues therefore that the parties should be able to place their own economic value on various provisions and negotiate accordingly, and that no public policy is violated by their agreement on termination without cause, notice, and hearing. As a result of the "without cause" provision in its employment agreement, the town argues, the town manager had no reasonable expectation of continued employment and thus no right to due process once it tendered her the money the employment agreement called for.

There is no Maine Law Court decision on point, and there appears to be only one out-of-state decision that is at all analogous. In Ramsey v. City of Sand Point, 936 P.2d 126 (Alaska 1997), a city ordinance required just cause for dismissal of the police chief, but the city and the chief negotiated and executed an employment agreement allowing termination *without* just cause upon payment of severance pay. In Ramsey, it was the police chief who had requested

and obtained a provision both narrowing the list of permitted "just cause" terminations and requiring severance pay for all other terminations. The Alaska Supreme Court found that the chief had thereby intentionally waived his right to just cause. The Alaska Court did recognize a limitation on the ability to waive statutory rights: "parties may agree to waive statutory rights *unless a question of public policy is involved*," id. at 130 (emphasis added), and a statute "is not waivable if it was enacted for the protection of the public generally," id. at 131. But Ramsey found that the just cause requirement of the city's ordinance for terminating its police chief was for the benefit of only the parties to the contract, that it did "not affect the rights of third parties or the public generally," and that the parties could therefore waive it. Id.

The relationship between a select board (or a city or town council) and its town manager, with their allotted roles in municipal governance, is distinct from the relationship with a police chief who, while an important officer, has an assigned subordinate role (generally subordinate even to the town manager). Tensions between a legislative body, like a select board, and its town manager are not uncommon. Commentator Haag, writing in 1970 about town council/manager government (Rumford's government is select board/manager), stated:

> A council-manager charter should provide a procedure for removal of the manager. While it is rare that a manager might refuse to resign at the request of the council, there may be circumstances when a manager feels obligated to bring the issues precipitating his removal to public attention. Without an appropriate removal procedure, the manager could be summarily fired by formal action of the council, without any public hearing. *The elements of such an appropriate managerial removal procedure are: a formal action of the*

9

> *council to suspend the manager with reasons given for the suspension; the opportunity for the manager to respond and request a public hearing; a public hearing, if so requested; a formal action of the council in approving or rejecting the removal of the manager; and the continuance of the manager's salary until removal is finalized by council action.*

James J. Haag, <u>Municipal Administrative Organization</u> p. 6 (1970) (emphasis added). Haag went on to say that that Maine's "town manager plan" created just such a procedure for town meeting-selectmen-manager towns, <u>id</u>., and added: "Such procedure is an obstacle to arbitrary and capricious council action and it assures an opportunity for any charges against the manager to be publicly aired and answered." <u>Id</u>. at 7.[10]

The same reasoning applies here. Maine's general statute on termination of municipal officials, Maine's statutory town manager plan, and Rumford's ordinance on termination of the town manager—all recognizing the need for cause, notice, and public hearing—embody an important public policy for municipal government, assuring public transparency in the relationship between the town select board and town manager. Allowing those parties to waive the requirements in advance might serve their own interests, but it does not serve the interests of townspeople in learning why the select board is terminating the town manager. Prospective waiver of this sort is different in kind from after-the-fact settlement of a dispute. Prospective waiver allows the select board to proceed with impunity in its relationship to the town manager, not having to reckon with controversy and public attention that may come to light under the

---

[10] Although Haag was referring to Maine's "town manager plan," subchapter 2 of chapter 123 of 30-A M.R.S.A., in particular section 2633(3) concerning suspension and removal of a town manager, Rumford's ordinance mirrors the removal procedures of cause, notice, and hearing.

cause, notice, and hearing provisions if the town manager insists on them.[11] Moreover, prospective waiver removes the threat of injunctive relief for an improper termination. Finally, why would the legislature (and the town in its ordinance) go to the trouble of outlining the detailed procedures for termination, only to have the select board say "Never mind" by obtaining a prior contractual waiver? I conclude that the statutes and the ordinance requiring cause, notice, and hearing for termination reflect an important public policy in the transparent administration and management of town affairs, and that it is not outweighed by the parties' interest in freedom of contract.

In summary, the town manager has a property interest in her 3-year contract that the statute and ordinance provide can be terminated only for cause. Therefore, she states a cause of action in Count 3 for a deprivation of procedural due process under the United States Constitution that is not subject to dismissal under Rule 12(b)(6). That creates federal question jurisdiction for Count 3. 28 U.S.C. § 1331. Because Count 3 is viable, Counts 1 and 2 can proceed in federal court under supplemental jurisdiction. 28 U.S.C. § 1367(a).

Count 2, the state due process claim survives the 12(b)(6) motion for the same reason as Count 3. The Maine Law Court's definition of property interest in public employment for purposes of the state constitution's due process clause, Art. I, § 6-A, is equivalent to the federal definition. Specifically, "[a] public employee has a constitutionally protected property interest in continued

---

[11] I recognize that even given my holding in this decision, the town might be able to settle this lawsuit by paying sufficient money to the town manager plaintiff, without ever providing cause, notice, and a hearing. But it is materially different to have the town manager's prior advance waiver of cause, notice, and hearing for termination by contractually establishing an amount as liquidated damages.

employment where a justifiable expectation of continuity is guaranteed to some extent by state statute, contract, or implicit conduct or policy." Durepos v. Town of Van Buren, 516 A.2d 565, 566 (Me. 1986); accord Barber v. Inhabitants of Town of Fairfield, 460 A.2d 1001, 1005 (Me. 1983) (where statute provides for removal of police officer for cause after notice and hearing, it limits the power to discharge and "create[s] a property interest in the plaintiff's employment").

Finally, Count 1, the statutory and ordinance claim, survives for the reasons I described in text finding those laws enforceable despite the parties' agreement to the contrary.

As part of their motion, the defendants seek dismissal of all claims against the members of the select board whom the plaintiff sued in their official capacities. Although the Complaint does not distinguish the relief sought against them and against the town, the plaintiff has said in her response to the motion that "Plaintiff requests injunctive relief against these Defendants, not damages." Pl.'s Opp'n at 18 (ECF No. 10). I therefore **GRANT** the named select board defendants' motion to dismiss any damages claim against them. The claim for injunctive relief, however, remains.

I **DENY** the defendants' motion to dismiss, except for the claim for damages against individual members of the select board; in that respect it is **GRANTED**.

**SO ORDERED.**

**DATED THIS 30TH DAY OF SEPTEMBER, 2019**

/S/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**